UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAWN V. MARTIN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 99-1175 (TFH) |
| | ) |
| **HOWARD UNIVERSITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

**I.   Background**

Plaintiff Dawn Martin, a Visiting Professor at Howard University School of Law from July 1996 through May 1998, brought this action against several defendants on May 14, 1999. On April 28, 2006, the jury in this case found for the remaining Defendants, Howard University and Howard University School of Law (collectively, "Howard"), on all three counts - sexual harassment, retaliation, and breach of contract. Since that time, both Plaintiff and Defendants have filed a number of post-trial motions. For the reasons stated below, the Court denies all of Plaintiff's post-trial motions and denies all of Defendants' post-trial motions as moot.

**A.   Factual Background**

Plaintiff alleges that she was the victim of a hostile work environment in violation of Title VII and the District of Columbia Human Rights Act as a result of the conduct of Mr. Leonard Harrison, a homeless person who was neither an employee of, nor a student at, Howard. Specifically, Mr. Harrison sent Plaintiff two letters that were hand-delivered to Plaintiff's office, left voice mail messages for her, and attempted three personal visits to Plaintiff's office (Plaintiff was only in her office during the third visit and Harrison was chased out by a security officer), and

at one point stated that he thought Plaintiff was his wife. Plaintiff has claimed that Howard's response and inaction towards Mr. Harrison is a violation of Title VII.. Plaintiff's other two claims include retaliation in violation of Title VII and breach of contract. Plaintiff asserted that because of her complaints regarding Mr. Harrison and her requests for protection from Mr. Harrison, the administration retaliated against her in several ways. Through the pre-trial process, Plaintiff's retaliation claims were narrowed to the two alleged acts: the then Dean of the law school, Dean Bullock, got the Appointments, Promotions and Tenure Committee ("APT Committee") to not recommend Plaintiff for the EEO/Labor Law tenure-track position she sought and to instead recommend Professor Cunningham, and that Dean Newsom sent Plaintiff a letter asking her to vacate her office early, in May 1998, rather than in June or July 1998 when most professors had to leave. *See* Order [#422], dated March 30, 2006. Plaintiff also alleges she had an oral contract that her renewed visitorship would be renewed until a tenure-track position became available, at which time she would get that position. Plaintiff alleged the contract was breached when she was not selected for any tenure-track position.

### B. The Verdict and Findings at Trial

At trial, Plaintiff put on a number of witnesses.[1] At the close of Plaintiff's case, both Plaintiff and Defendants moved for a judgment as a matter of law on all three claims. The Court reserved ruling on the motions and let the Defendants present their case. At the close of the Defendants' case, the parties renewed their motions as a matter of law, on which the Court again reserved ruling. The jury came back with a verdict for the Defendants on all three claims.

---

[1] The Court notes that during the trial Plaintiff discharged two different attorneys and eventually represented herself towards the end of the trial through the jury verdict.

2

Based on the jury verdict form, the jury found the following key facts.

<u>Sexual Harassment/Hostile Work Environment Claim</u> - That Mr. Harrison subjected Plaintiff to unwelcome conduct so sufficiently pervasive or severe as to alter the terms and conditions of her employment and that Defendants knew or should have known of the unwelcome conduct and failed to take proper remedial action to correct the conduct. However, the jury also found that Mr. Harrison's conduct was not sexual in nature, nor was not because of Plaintiff's gender, and thus found for Defendants on this claim.

<u>Retaliation</u> - The jury found that Plaintiff was not engaged in protected activity when she contacted the Dean's office about Mr. Harrison's conduct and that Defendants did not know of Plaintiff's protected activity and that Defendants did not intentionally retaliate against Plaintiff because of her protected activity and that her protected activity was not a substantial factor in the APT Committee's decision not to recommend Plaintiff for the Labor Law/EEO tenure-track position or in the decision to send Plaintiff a letter asking her to turn in her keys and leave her office (and that such a letter was not an adverse action).

<u>Breach of Contract</u> - The jury found that Plaintiff did not prove she had an oral promise, as alleged, from Professor Taslitz that Howard would keep renewing her visitorship and then slide her into a tenure-track position when one became available, and thus found for Defendants on this claim.

**C.     Summary of Post-Trial Motions**

Plaintiff has filed three renewed motions for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial, pursuant to Federal Rules of Civil Procedure 59 and 60. Each motion is related to one of the three different claims

and each also incorporates Plaintiff's arguments made in her previous motions for judgment as a matter of law.[2] Defendants also filed three renewed motions for judgment as a matter of law on each of three claims. Defendants also incorporated all of their arguments from their original motions for judgment as a matter of law.

## II.     Relevant Legal Standards

### A. Rule 50(b)

A Rule 50(b) motion "should not be granted unless the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable jurors could not disagree on the verdict." *Elam v. C & P Telephone Co.*, 609 F. Supp. 938, 940 (D.D.C. 1984) (internal citations omitted). In reviewing the evidence the court should draw all reasonable inferences in favor of the nonmoving party. *Thomas v. Mineta*, 310 F. Supp. 2d 198, 203 (D.D.C. 2004). A court may "neither assess witness credibility nor weigh evidence" in deciding such a motion. *Nyman v. Chairman, Federal Deposit Insurance Corp.*, 1997 WL 243222, *2 (D.D.C. 1997).

### B. Rule 59

Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted in a case that had a jury trial for "any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." To preserve the function of the jury, new

---

[2]     Plaintiff also filed, by leave of the Court, a Supplement to Her Pending Motion for Judgment on Her Retaliation Claims with New Case Law Holding that the Employer's Failure to Fill a Vacancy May Constitute Retaliation, *Ruggieri v. Merit Systems Protection Board*.

trials should not be granted unless "a solid basis for doing so" exists. *Warren v. Thompson*, 224 F.R.D. 236, 239 (D.D.C. 2004) (internal citations and quotations omitted). Further, such a motion should only be granted when the court is convinced that the jury verdict was a "seriously erroneous result" and where denial of the motion will result in a "clear miscarriage of justice." *Id*. (internal citations and quotations omitted). Generally, a new trial may only be granted when a manifest error of law or fact is presented. Further, the standard for granting a new trial is not whether minor evidentiary errors were made. *See, e.g.*, *Nyman*, 1997 WL 243222 at * 3.

    **C. Rule 60(b)(3)**

Rule 60(b)(3) of the Federal Rules of Civil Procedure provides that a party may seek relief from a final judgment or order for fraud, misrepresentation, or other misconduct of an adverse party. To prevail, the moving party must prove by clear and convincing evidence some sort of fraud, misrepresentation or other misconduct. *See Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). If the moving party makes such a showing, the court must balance "the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard University*, 374 F.3d 1188, 1193 (D.C. Cir. 2004). The moving party must show actual prejudice has resulted from the misconduct, misrepresentation or fraud. *Id*. Finally, it is in the court's discretion to grant such a motion. *Id*.

**III.**    **Plaintiff's Post-Trial Motions**

    **A.**    **Plaintiff's Renewed Motion As a Matter of Law As to Sexual Harassment Claim**

In Plaintiff's first post-trial motion, Plaintiff's Renewed Motion for Judgment on Her

Sexual Harassment Claim, Pursuant to Rule 50(B), or in the Alternative, for a New Trial, Pursuant to Rules 59 and 60 ("Plaintiff's Renewed Motion re Sexual Harassment"), Plaintiff asks the Court to enter a judgment on her sexual harassment claim, notwithstanding the jury verdict, as a matter of law, or, in the alternative to grant her request for a new trial or provide her with relief from the judgment due to alleged fraud.

Plaintiff's Rule 50(b) motion essentially focuses on the jury's finding that Mr. Harrison's conduct was not sexual in nature or was not due to Plaintiff's gender because this was the only factual finding that resulted in the jury finding for Defendants on the sexual harassment claim. Plaintiff argues that the jury's finding is contrary to this Court's 1999 opinion in this case, which granted in part and denied in part Defendants' motion to dismiss, and is contrary to Defendants' admissions and the evidence in record. Plaintiff further argues that the jury's notes to the Court during its deliberation demonstrate juror confusion over the law, perhaps in support of her Rule 59 motion. Plaintiff also states that the Court's rejection of her proposal to instruct the jury on the criminal definition of stalking that explained that "stalking may be a form of sexual harassment," in the written jury instructions added to juror confusion.

Defendants correctly assert that the Court's 1999 opinion did not preclude the jury from finding that Mr. Harrison's conduct was neither sexual in nature, nor was because of Plaintiff's gender. The Court's 1999 opinion was not a decision on the merits, but rather found that the Plaintiff had satisfied her burden in putting forth sufficient facts to make out a claim that could go to a jury for resolution. In its 1999 opinion, this Court even stated that as it was granting Defendants' motion to dismiss, or in the alternative for summary judgment, as to the individually-named defendants and as to the relevant defendants on Plaintiff's intentional infliction of

emotional distress claim, that it was denying such motion with respect to the remaining counts, including Plaintiff's sexual harassment claim, because "those claims present material issues of fact which must be decided by a jury." *Martin v. Howard University*, 1999 U.S. Dist. Lexis 19516 at *22. Thus, this Court never found that Mr. Harrison's conduct was sexual in nature or because of Plaintiff's gender, but left this as a question for the jury. *Id*. The jury verdict did not, therefore, contradict the Court's 1999 decision.

Plaintiff also argues the jury's finding that Mr. Harrison's conduct was not sexual in nature or because of Plaintiff's gender contradicts Defendants' admissions and cannot be supported by the evidence at trial.[3] Plaintiff states that Defendants admitted, through Dean Newsom and Dean Bullock at trial, that Mr. Harrison's conduct caused them concern about the safety not only of Plaintiff, but also of other women on campus. This sort of testimony, along with other evidence Plaintiff points to, does not, taken in the light most favorable to Defendants, indicate that Defendants admitted that Plaintiff's gender was the basis or the reason for Mr. Harrison's conduct.[4] Defendants never stipulated to this fact. It is in the purview of the jury to determine this fact, and even given the evidence cited by Plaintiff, there was still sufficient

---

[3] Plaintiff also states that the Court took judicial notice during the trial that the relationship between a husband and wife is sexual in nature. There is simply no basis for this argument; the Court did not take judicial notice and simply made a comment to move along the examination of a witness. Plaintiff also argues the jury finding contradicts the dictionary definition of "wife." However, the jury did not decide the definition of "wife," rather they found that Mr. Harrison's conduct was not based on Plaintiff's gender, as discussed above, a reasonable finding supported by the evidence.

[4] Defendants dispute whether some of this evidence was actually admitted at trial. Even assuming it was, it is not enough to show that the jury's finding was not sufficiently supported by the evidence presented at trial.

evidence in the record to support the jury's finding.  The evidence in this case was not so one-sided that a reasonable jury could only have reached one determination: that Mr. Harrison's conduct was because of Plaintiff's gender or was sexual in nature. The jury did not hear or see evidence that Mr. Harrison's conduct involved conduct typical of sexual harassment such as groping, touching, or making sexual advances.[5]  Also, there was evidence presented at trial that Mr. Harrison was also stalking at least one male professor at another university.  Thus, the Court finds there was sufficient evidence for a reasonable jury to support its finding that Mr. Harrison's conduct was not sexual in nature or because of her gender and that the evidence was not so one-sided such that the jury could only reach one conclusion.

      Plaintiff's second argument, perhaps in support of her Rule 59 motion, is that the juror notes demonstrate confusion concerning sexual harassment.  Plaintiff points to three juror questions that were asked in two separate notes.  The first question was "what is meant by the terms and conditions of her [Plaintiff's] employment."  However, this jury question was resolved in Plaintiff's favor and does not generally demonstrate confusion about sexual harassment.   The second question and third question were asked together as follows:

      (1) Wives are typically female. Is 1c an automatic 'yes' just because plaintiff is female.

      (2) Please define sexual harassment.

The "1c" in the first question refers to the jury verdict form question that asked the jurors whether Mr. Harrison's conduct was sexual in nature or because of Plaintiff's gender. The Court answered

---

[5]    Although such specific actions are not necessary for a finding of a hostile work environment, here it was reasonable for the jury to find that even considering the conduct that did occur, for example the content of Mr. Harrison's letters and voice mails, including his statement that he was looking for his wife, that his conduct was not sexual in nature and was not because of Plaintiff's gender.

the first of these questions by stating, "No, it is not an automatic 'yes'. You must base your decision on the evidence presented to you."[6] The Court answered the second question by referring the jurors back to Jury Instruction 23 as that instruction clearly defined sexual harassment, using a definition that took into account both parties' proposals. Plaintiff argues that the Court's response to the first question may have confused the jurors in that it somehow contradicted what Plaintiff perceived to be as the Court's judicial notice that it is obvious that the relationship between a husband and wife is inherently sexual.  As stated the Court's comment was not judicial notice and it was not an instruction; further it did not contradict the answer to the question about how to answer the question of whether Mr. Harrison's conduct was sexual in nature or because of gender. If it were an "automatic yes," the question would never have been presented to the jury.  It is for the jury to decide unresolved questions of fact. Plaintiff's arguments about jury confusion lack merit.  Further, if Plaintiff is trying to argue that this alleged juror confusion should result in a new trial, she is mistaken. Plaintiff has not met her burden of showing a manifest error of law or fact occurred.

      Plaintiff's final argument on this issue is that the Court erred in not giving her proposed instruction to the jury that provided the criminal definition of stalking and explained it was a form of sexual harassment. Plaintiff argues that if the jury had realized the local criminal statute regarding stalking incorporates harassment as part of its definition, they would have understood that when Plaintiff filed a stalking complaint with the police she necessarily incorporated harassment in her complaint.  Plaintiff's argument is not convincing.  First, the jury was instructed as part of the instruction defining sexual harassment that "stalking may constitute sexual

---

[6] Judge Kessler presided over answering these two questions.

harassment." This part of the instruction served the same purpose as Plaintiff's requested instruction - it notified the jurors that stalking is a form of harassment. As Defendants point out, there was no need for the criminal code definition of stalking as it would have confused the jury and was unnecessary. Omitting the specific instruction sought by Plaintiff was not a manifest error of law that would justify granting her Rule 59 motion.

Because Plaintiff's arguments are unconvincing and Plaintiff has not made a showing that the jury verdict was not reasonably supported by the evidence at trial, the Court denies her Rule 50(b) motion for a judgment as a matter of law on her sexual harassment/hostile work environment claims. Nor has Plaintiff met the standard for a new trial under Rule 59, in that she has not shown a manifest error of law or fact, or for relief from judgment under Rule 60(b)(3) because Plaintiff did not prove with clear and convincing evidence that Defendants engaged in fraud, misrepresentation or other misconduct.

### B.   Plaintiff's Renewed Motion For Judgment on Her Retaliation Claims

In Plaintiff's second post-trial motion, Plaintiff's Renewed Motion for Judgment on Her Retaliation Claim, Pursuant to Rule 50(B), or in the Alternative, for a New Trial, Pursuant to Rules 59 and 60 ("Plaintiff's Renewed Motion re Retaliation"), Plaintiff asks the Court to enter a judgment on her retaliation claims, notwithstanding the jury verdict, as a matter of law, or, in the alternative to grant her request for a new trial or provide her with relief from the judgment due to alleged fraud.

Plaintiff's arguments in this motion border on the frivolous. None of her arguments really support her Rule 50(b) motion. Plaintiff essentially tries to rehash issues and arguments concerning the scope of her retaliation claims that were already decided on summary judgment.

Magistrate Judge Facciola's Report and Recommendation in this case, which was adopted by this Court, narrowed the scope of Plaintiff's retaliation claims. Plaintiff moved for reconsideration on this issue in one form or the other at least *six* times and had enough chances to argue this issue. The purpose of a Rule 50(b) motion is not to rehash decisions that were made pre-trial, but to determine whether the jury verdict was supported by the evidence presented at trial. Plaintiff does her motion little justice by spending pages and pages trying to reargue issues that were decided before the trial began, rather than discussing the evidence presented at trial.[7] Plaintiff also attempts to argue that the jury was not properly instructed on what constitutes an adverse action under the D.C. Circuit's retaliation case law; however, the jury instruction on retaliation did reflect the recent clarification in the D.C. Circuit's definition of an adverse action, embodied in the *Rochon* case. *See Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

      The Court can only construe these arguments to support Plaintiff's Rule 59 motion for a new trial. Under the standard for granting such a motion, Plaintiff must show a manifest error of law or fact. The Court cannot find that disallowing certain of Plaintiff's original retaliation claims was such an error. Plaintiff's contention about the retaliation jury instructions is wrong and as such cannot be the basis for granting a motion for a new trial.

      Plaintiff's only other discernible argument in support for her Rule 50(b) motion for judgment as a matter of law is that even if the jury had sufficient evidence to reasonably determine that Mr. Harrison's conduct was not sexual in nature or based on her gender, as the Court has just found it did, that the jury still should have found Plaintiff engaged in protected

---

[7] Indeed Plaintiff filed a thirteen-page supplement citing a new Federal Circuit case in support of reinstating her previously dismissed retaliation claims.

activity by reporting the harassment that she perceived was based on her sex.  Plaintiff did testify at trial that she perceived Mr. Harrison's conduct to be sexual in nature and because of her sex; however, it was not unreasonable for the jury to find that she did not engage in protected activity in complaining about Mr. Harrison to the Dean's office.  Aside from testimonial evidence, the jury also had a great deal of documentary evidence that documented Plaintiff's complaints to the Dean's office.  Based on the documentary evidence, there was sufficient evidence for the jury to reasonably find that Plaintiff did not engage in a protected activity because, for example, Plaintiff phrased some of her complaints as security issues.[8]  Plaintiff does not meet her burden of showing under Rule 50(b) that the evidence was so one-sided that a reasonable jury could have only reached one conclusion on the protected activity issue.

Plaintiff goes on to argue that had the jury found she had engaged in a protected activity, it would have then gone on to find that Defendants' reasons for not giving Plaintiff the tenure-track position she sought were pretextual and false.  This is an extremely tenuous and speculative argument.  Further, Plaintiff never addresses the fact that in addition to finding no protected activity, the jury also found that Defendants had not intentionally retaliated against Plaintiff.  To reach whether or not Defendant's alleged non-discriminatory reasons for not selecting Plaintiff were pretextual, the jury would first have had to have found that Defendants intentionally retaliated against her and that her alleged protected activity contributed in some way to the decision not to select Plaintiff for the tenure-track position. Plaintiff does not argue that this jury

---

[8] While there are no "magic words" that need to be said to invoke Title VII protection, *see Martin v. Howard University*, 1999 U.S. Dist. Lexis19516 at *17, it was up to the jury to determine whether Plaintiff's communications with the Dean's office constituted protected activity.

finding that there was no causal connection between her alleged protected activity and her non-selection was not supported by the evidence presented at trial. Instead, Plaintiff jumps to whether Defendants' reasons for not giving her the tenure-track position were pretextual. In any event, the evidence presented on the issue of whether Defendants' reasons for not selecting Plaintiff were pretextual was not so one-sided as to only result in one conclusion. Further, as Defendants point out, there was sufficient evidence for the jury to reasonably find that Plaintiff was not selected for the tenure-track position for legitimate reasons and this decision was not taken because of Plaintiff's alleged protected activity. In their opposition, Defendants correctly point to a great deal of testimonial evidence from the members of the APT Committee to support the jury's finding that Defendants did not retaliate against her, i.e., that they did not select someone other than Plaintiff for the tenure-track position because of Plaintiff's alleged protected activity.

As to her second retaliation claim based on Dean Newsom's letter asking her to vacate her office, Plaintiff only addresses it substantively in her reply brief. She argues that the verdict form should have clearly stated the language from *Rochon* and *Burlington*; however this was unnecessary as the jury instructions did include such language in defining an adverse action. Plaintiff's argument is disingenuous and misleading. Plaintiff also argues Defendants were on notice of her EEOC charge, her protected activity, at the time of the alleged retaliation, but the resolution of this question is unnecessary at this time as there was sufficient evidence from which the jury reasonably found that the early eviction notice was not an adverse action, and thus did not have to reach the question of notice.

Because Plaintiff has not made a showing that the jury verdict concerning her retaliation claims was not reasonably supported by the evidence at trial, the Court denies her Rule 50(b)

motion for judgment as a matter of law on her retaliation claims. Plaintiff has also not shown any manifest error of law or fact for a new trial under Rule 59, or shown with clear and convincing evidence that Defendants engaged in fraud, misrepresentation or other misconduct under Rule 60(b)(3).

      **C.**     **Plaintiff's Renewed Motion for Judgment on Her Contract Claim**

In Plaintiff's third post-trial motion, Plaintiff's Renewed Motion for Judgment on Her Contract Claim, Pursuant to Rule 50(B), or in the Alternative, for a New Trial, Pursuant to Rules 59 and 60 ("Plaintiff's Renewed Motion re Contract Claim"), Plaintiff asks the Court to enter a judgment on her contract claim, notwithstanding the jury verdict, as a matter of law, or, in the alternative to grant her request for a new trial or provide her with relief from the judgment due to alleged fraud.

Plaintiff wastes time discussing issues that the jury did not even reach. The only finding the jury made as to this claim was that Defendants, specifically Professor Taslitz, did not promise Plaintiff that her employment with the university would continue past her two-year agreement; the jury did not need to go beyond this question. As to this finding, Plaintiff argues there was evidence presented at trial, including her testimony and documentary evidence, that shows no one from the university told her that she was not guaranteed to stay on more than the two years in her written agreement, indicative of a meeting of minds and that a promise as such was made. This unconvincing argument takes a large logical leap. Further, most of the evidence Plaintiff points to is in the context of pretrial discovery, not what actually was presented at trial. Further, the jury did have enough trial evidence to reasonably find, as they did, that no such promise was made - they heard testimony from Professor Taslitz, they saw documentary evidence of communications

between Plaintiff and Professor Taslitz and they heard testimony from Professor Leggett, the then-head of the APT Committee, that Professor Taslitz did not make the alleged promise to Plaintiff. The jury had a sufficient basis to reasonably find that Plaintiff had not shown by a preponderance of the evidence that such a promise was made. The Court cannot find the evidence presented at trial was so one-sided that a reasonable jury could only find that such a promise was made.

Plaintiff also argues that Defendants made misrepresentations to, among other things, hurt Plaintiff's credibility. This argument lacks merit.[9] Finally, Plaintiff argues that certain pieces of evidence that were ruled inadmissible before the trial should have been admitted and that their exclusion prejudiced Plaintiff. Plaintiff does not show how these exhibits would bolster her contract claim or cut against the jury's finding that no promise was made to Plaintiff about extending her employment past the two-year agreement. Any connection between these exhibits, including student letters protesting her non-renewal and a treatise crediting her contribution, and the question of whether Plaintiff was promised an extension in the form of a renewed visitorship or a tenure-track position is extremely speculative and remote. Plaintiff has not carried her burden in her Rule 50(b) motion of showing the jury verdict was not supported by the evidence presented at trial.

Assuming Plaintiff points to these evidentiary issues in support of her motion for a new

---

[9] Plaintiff also incorporates her motion for additional time to complete the trial. It is surprising that Plaintiff would raise such motion at this time. At the outset of trial, each side was allotted twenty-five hours each; only each side's direct, cross, and redirect examinations would count against them, their opponent's cross-examination time of their witness did not count. Plaintiff received extra time despite several warnings that she was running out of time. This trial lasted three and a half weeks; Plaintiff had plenty of time to present her evidence and rebut Defendants' evidence. This argument cannot support her motion for a new trial.

trial, the Court does not find that the evidentiary rulings Plaintiff cites were manifest errors of law. Plaintiff also argues that the instruction given to the jury concerning Plaintiff's two changes in counsel and decision to represent herself was somehow prejudicial. In fact the instruction was meant to ensure that the jury would understand the two changes made and not hold them against Plaintiff. The instruction was not a manifest error of law and the Court does find that denying Plaintiff's motion for a new trial would result in a miscarriage of justice.

Because Plaintiff has not made a showing that the jury verdict concerning her contract claim was not reasonably supported by the evidence at trial, the Court denies her Rule 50(b) motion for judgment as a matter of law on her contract claim. Plaintiff has also not shown any manifest error of law or fact for a new trial under Rule 59, or shown with clear and convincing evidence that Defendants engaged in fraud, misrepresentation or other misconduct under Rule 60(b)(3).

### IV.     Defendants' Post-Trial Motions

Because the jury found for the Defendants on all three claims, and the judgment was entered on August 21, 2006, after Defendants filed their post-trial motions, the Court finds Defendants' motions are moot.

### V.     Conclusion

For the reasons stated above, the Court denies Plaintiff's renewed motions for judgment as a matter of law on each of her three claims, Plaintiff's Rule 59 motion for a new trial, and Plaintiff's Rule 60(b)(3) motions. The Court also denies Defendants' renewed motions for

judgment as a matter of law on each claim as moot. An appropriate order accompanies this memorandum opinion.

October 4, 2006

>                           /s/
>                   Thomas F. Hogan
>                     Chief Judge